## RELATED INDUSTRIES, INC.

v.

### The UNITED STATES.

### No. 237–83C.

United States Claims Court.

May 26, 1983.

---

* By order of May 13, 1983, Judge Wiese was designated as Acting Chief Judge for purposes of presiding over the court in its consideration of the petition for review.

Marc Lamer, Philadelphia, Pa., for plaintiff; Joseph H. Reiter and Theodore M. Kostos, Philadelphia, Pa., of counsel.

Marsha D. Peterson, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant; David M. Cohen, Director, Thomas W. Petersen, Asst. Director, and Molly H. Colburn, Washington, D.C., of counsel.

## OPINION

MILLER, Judge:

In this suit plaintiff seeks a declaratory judgment that plaintiff is the properly qualified low bidder for a contract for sleeping bags for which bids were solicited by the Defense Personnel Support Center (DPSC) and an injunction restraining the United States, the Secretary of Defense, the Director of the Defense Logistics Agency, the Director of the Defense Personnel Support Center, the contracting officer and their subordinates from awarding the contract to any other bidder and requiring its award to plaintiff.

The complaint, filed April 13, 1983, alleges the following: On or about February 11, 1983, DPSC formally advertised for competitive bids for 150,000 sleeping bags, with bid opening to be on March 10, 1983. Plaintiff was low bidder with a total aggregate bid price of $7,027,350. On or about March 23, 1983, the contracting officer notified plaintiff that he intended to reject its bid as non-responsible and that he planned to reject any and all of plaintiff's future bids. Its bid was rejected on the ground that its president and sole shareholder is a consultant to another former contractor, Cecile Industries, Inc., which had been rejected on previous solicitations for lack of integrity, tenacity and perseverance and poor performance record. Plaintiff asserts that the contracting officer's action was taken without a preaward survey required by the Department of the Army regulations and was arbitrary, capricious and contrary to law, and that the award of the contract to a bidder other than plaintiff will cause immediate and irreparable loss, injury and damage to plaintiff.

The government having agreed to postpone its award of the contract long enough to enable trial on the merits, plaintiff waived its motion for temporary restraining order, and the case was set for trial on May 12, 1983.

On May 4, 1983, defendant filed a motion to dismiss the complaint. Shortly before trial the court notified both parties of the denial of the motion to dismiss and that the grounds therefor would be included in the opinion filed after trial. The case was tried on May 12 and 13, 1983. Award of the contract has now been postponed until May 31, 1983.

I

*Defendant's Motion to Dismiss Complaint*

The motion to dismiss alleges that the proposed contract is set aside for small business, and under such circumstances by statute and regulation the Small Business Administration (SBA) is required to make a responsibility determination; that under the applicable statute the SBA's determination is conclusive; and, further, that under such statute neither the SBA nor the Department of Defense acting pursuant to the SBA determination, may be enjoined.

In its brief in support of its motion, defendant reprints and incorporates the decision in *Speco Corp. v. United States*, 2 Cl.Ct. 335 (1983) (MAYER, J.). However, for the reasons set forth hereinafter I respectfully disagree with that decision and decline to follow it.

A. The Contention that the Small Business Administration Determination is Final

Defendant and the *Speco* decision rely upon two statutory sections, 15 U.S.C. §§ 637(b)(7) (Supp. V 1981) and 634(b)(1) (1976). The first of these sections is in pertinent part as follows:

§ 637. *Additional powers*

*  *  *  *  *  *

(b) *Procurement and property disposal powers; determination of small business concerns*

It shall also be the duty of the [Small Business] Administration and it is empowered, whenever it determines such action is necessary—

*  *  *  *  *  *

(7)(A) To certify to Government procurement officers * * * with respect to

all elements of responsibility, including, but not limited to, capability, competency, capacity, credit, integrity, perseverance, and tenacity, of any small business concern or group of such concerns to receive and perform a specific Government contract. A Government procurement officer * * * may not, for any reason specified in the preceding sentence preclude any small business concern or group of such concerns from being awarded such contract without referring the matter for a final disposition to the Administration.

\* \* \* \* \* \*

(C) In any case in which a small business concern or group of such concerns has been certified by the Administration pursuant to (A) or (B) to be a responsible or eligible Government contractor as to a specific Government contract, the officers of the Government having procurement * * * powers are directed to accept such certification as conclusive, and shall let such Government contract to such concern or group of concerns without requiring it to meet any other requirement of responsibility or eligibility.

It is contended that because the statute gives "final disposition" of the competency certification to the SBA, this court may not review the propriety of plaintiff's rejection. However—

1. The final disposition to which the statute refers is only final with respect to a decision certifying a contractor to the procurement officer as responsible. The procurement officer is required to refer the matter to the SBA only after he has decided to preclude a small business concern from being awarded a contract for lack of responsibility. Thus, if the SBA's decision reverses the procurement officer and certifies the small business concern as responsible, such disposition is made final as to the procurement officer so as to protect the concern from such officer's refusal to follow the SBA decision. The procurement officer is "directed to accept such certification as

conclusive, and shall let such Government contract to such concern." There is no rational basis for construing this protective provision to deny to the small business concern access to a court which is otherwise available to all other business concerns, for relief from adverse actions by the procurement officer or the SBA, or both, which are in violation of the concern's rights under the Constitution, are contrary to statutes or regulations, or are otherwise arbitrary or capricious.

2. The focus of Defense Acquisition Regulations (DAR)[1] 1–705.4 is also consistent with this construction. Subparagraph (a) reads: "Contracting officers shall accept SBA certificates of competency as conclusive of a prospective contractor's responsibility * * * unless the contracting officer has substantial doubt as to the concern's ability to perform," in which event he is to refer the matter back to the SBA. Subparagraph (f) then provides:

Following an appeal, the determination, if affirmative, made by the SBA Associate Administrator relative to Certificate of Competency action shall be considered conclusive, and the contracting officer shall award the contract to the concern without requiring the concern to meet any other requirement of responsibility.

3. The text or legislative history of a statute must provide " 'clear and convincing' evidence of congressional intent * * * before a statute will be construed to restrict access to judicial review." *Johnson v. Robison,* 415 U.S. 361, 373–74, 94 S.Ct. 1160, 1168–1169, 39 L.Ed.2d 389 (1974). In *Whitecliff, Inc. v. United States,* 210 Ct.Cl. 53, 58, 536 F.2d 347, 350 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), the Court of Claims recognized that there is a "normal presumption in favor of judicial review." It should take more than the language of § 637(b)(7) to undermine that presumption here.

4. The legislative history of § 637(b)(7), recapitulated by the Court of Claims in *Siller Bros., Inc. v. United States,* 228 Ct.Cl. 76, 81–82, 655 F.2d 1039, 1043–44 (1981),

1. 32 C.F.R. Parts 1–39, Volume I (1982).

*cert. denied,* 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982), and therefore unnecessary to set out here, shows quite clearly that the section was designed to protect small businesses against discrimination by procurement officers, and there is no indication therein that it was designed to protect either the SBA or procurement officers from judicial review of arbitrary actions *against* small businesses.

5. In *Siller Bros., Inc., supra,* the court ruled that a procurement officer's authority to bar a defaulting small business contractor from bidding on a new contract is not restricted by the requirements of § 637(b)(7), because the purpose of that provision was merely "to end the discrimination against small business that existed because contracting officers had barred those businesses solely because of their smallness and disabilities allegedly resulting from that fact," and because "[t]he result would have been the same if the plaintiff had not been a small business." (228 Ct.Cl. at ——, 655 F.2d at 1044.) Since the procurement officer's refusal in this case to consider plaintiff's bid is for similar reasons, it likewise follows that judicial review of his actions is not limited by any restrictions in § 637(b)(7).

6. Finally, even if the section could be construed as defendant urges, the subsequent amendment to 28 U.S.C. § 1491, made by the Federal Courts Improvement Act of 1982, Pub.L. 97–164, Title I, § 133(a), 96 Stat. 25, 39, entitling contract bidders generally to court review of procurement officer's decisions failing to award contracts to low bidders, would be deemed to supersede it. Surely, it would not be logical to impute to Congress the intent to give judicial review of arbitrary treatment only to large companies and not at all to small business firms.

B. The Contention that Plaintiff Seeks an Illegal Injunction Against the Small Business Administrator

▮ The second section upon which defendant bases its motion to dismiss is:

§ 634. *General powers*

\* \* \* \* \* \*

(b) *Powers of Administrator*

In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the [Small Business] Administrator may—

(1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; *but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property* \* \* \* (underscoring supplied).

Defendant argues that in § 634 Congress waived the immunity of the Small Business Administrator against suit but withheld any waiver of immunity against an injunction, and, accordingly, neither the SBA nor its Administrator may be enjoined. Since in 28 U.S.C.A. § 1491(a)(3) (West Supp. 1983), consenting to injunctions in preaward contract cases, Congress did not explicitly amend 15 U.S.C. § 634(b)(1), the argument continues, the bar to injunctions against the SBA Administrator still remains in effect. From this defendant concludes that the court may not enjoin the Department of Defense in this case, because such an order would be an indirect injunction against the SBA Administrator in violation of the bar to a direct injunction against such official.

For a variety of reasons defendant's argument based on § 634 is equally without merit:

First, nothing in either 28 U.S.C.A. § 1491(a)(3) or the legislative history of the Federal Courts Improvement Act of 1982, *supra,* which added the provision consenting to injunctive relief in the Claims Court on a contract claim brought before the contract is awarded, gives the slightest support to the notion that Congress intended to carve out from this new remedy immunity for actions of the Small Business Administra-

tion, or for the actions of any other government agency withholding contracts from small business concerns, merely because the SBA has not disapproved. If § 1491(a)(3) gives consent which an earlier statute withheld, it must be deemed to supersede the earlier statute.

Second, nothing in either § 634(b)(1) or its legislative history indicates that Congress intended to give the SBA any greater immunity from injunctive relief or other legal process than that possessed by any other governmental agency. Rather, it merely intended to insure that the SBA be treated the same as any other government agency in this respect. To understand the origin and purpose of § 634(b)(1) one must go back to the decision in *FHA v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). There the Supreme Court ruled that when Congress establishes an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," Congress has waived the immunity of the United States not only to suit but to all civil process incident to such proceeding, including garnishment and attachment of the agency's assets. To avoid such a result, in several instances when Congress established a new governmental agency and authorized it to engage in commercial transactions and the administrator of the agency "to sue and be sued," it added boiler plate language similar to or identical with that of § 634(b)(1), withholding consent to attachment, injunction, garnishment, and similar process.[2]

The provisions of § 634(b)(1) may be traced back to § 205 of the Small Business Act of 1953, ch. 282, Title II, 67 Stat. 232, 234 (1953). The legislative committees reporting on the Act apparently felt that the purpose of the section was self-evident or had been explained sufficiently in connection with prior legislation so that there was no need to comment on it in their reports.

However, in explanation of a prior statute, enacted in 1948, which contained substantially identical language (the Commodity Credit Corporation Charter Act, ch. 704, § 4, 62 Stat. 1070 (1948), currently at 15 U.S.C.A. § 714b(c) (West Supp.1983)), the Senate committee report stated (S.Rep. No. 1022, 80th Cong.2d Sess., *reprinted in* 1948 U.S.Code Cong. & Ad.News 2138, 2148):

> Subsection (c) provides for suability and imposes certain limitations and restrictions upon the general right to sue and be sued. It is provided that no attachment, injunction, garnishment, or similar process may be issued, either prior to or after final judgment, against the Corporation or its property. The provision is like that contained in the act creating the Federal Crop Insurance Corporation (7 U.S.C., 1940 ed., 1506). The availability of any of these judicial processes would not afford to creditors or other persons suing the Corporation any benefit which would outweigh the possible detriment to the Government through hindrance or obstruction of the Corporation's operations, if it were made amenable to such processes.

It is quite clear that in withholding consent to suit for injunction, garnishment and attachment against the Small Business Administrator Congress intended no special exemption for the Administrator which would be different from that accorded government agencies generally, but only that in authorizing him to sue and be sued he should have the same immunity from injunction, garnishment and attachment as government agencies generally have. Thus there is no basis for any inference that because in 1982 Congress made no specific reference to 15 U.S.C. § 634 when it authorized injunctive relief against government agencies and departments generally on contract claims before award, it meant to exempt the Small Business Administration therefrom.

---

**2.** *E.g.,* 7 U.S.C. § 1506(d) (Supp. V 1981) (Federal Crop Insurance Corporation); 15 U.S.C.A. § 714b(c) (West Supp.1983) (Commodity Credit Corporation); 19 U.S.C. § 2350 (1976) (Secretary of Commerce); 20 U.S.C. § 1082(a)(2) (Supp. V 1981) (Secretary of Education); 20 U.S.C. § 1132d–1(b)(2) (Supp. V 1981) (Secretary of Education); 42 U.S.C. § 294h(a)(2) (1976) (Secretary of Health and Human Services); 42 U.S.C. § 3211(11) (1976) (Secretary of Commerce).

Third, even if § 634(b)(1) were not superseded by § 1491(a)(3) and still barred injunction against the SBA, it is difficult to comprehend why it should also be deemed to bar injunctive relief against a branch of the Department of Defense. The DPSC's refusal to consider plaintiff's low bid was not merely as an arm or instrumentality of SBA, but based on its own statutory and regulatory authority. If DPSC were now to reconsider its rejection of plaintiff's bid, SBA would have no authority to forbid it. In no way would injunctive relief against DPSC hinder or obstruct the operation of SBA.

Finally, even if § 634(b)(1) did bar the injunctive relief plaintiff seeks, it would not be a proper basis for dismissal of the complaint, because plaintiff's request for a declaratory judgment that it is the properly qualified low bidder entitled to the award would still remain viable. *Mar v. Kleppe,* 520 F.2d 867 (10th Cir.1975); *Claxton v. Small Business Administration,* 525 F.Supp. 777 (S.D.Ga.1981); *Lloyd Wood Construction Co. v. Sandoval,* 318 F.Supp. 1167 (N.D. Ala.1970), *rev'd on other grounds sub nom. Campbell Co. v. Lloyd Wood Construction Co.,* 446 F.2d 261 (5th Cir.1971).

## II

### *The Merits*

On February 11, 1983, the DPSC, a branch of the Defense Logistics Agency headquartered in Philadelphia, issued Solicitation No. DLA 100–83–B–0390 (Solicitation 0390) inviting bids for the manufacture and delivery of 150,000 sleeping bags for outdoor use by military personnel in cold weather, with the opening date for bids to be March 10, 1983. The plaintiff, Related Industries, Inc. (Related), with a total price of $7,027,350, was the low bidder. The next lowest bidder's price was $7,145,400.

On March 25, 1983, DPSC wrote to the SBA that the contracting officer, Paul Crossin, was proposing to reject the low offer submitted by Related and to accept the next lowest offer, despite the additional $118,050 cost to the government, "for factors which are in the nature of lack of tenacity, perseverance, integrity and capacity." It referred the proposed rejection to the SBA for processing pursuant to the requirements of 15 U.S.C. § 637(b)(7) and DAR 1–705.4 (32 C.F.R. 1–705.4 (1982)), i.e., to allow Related to file an application for a Certificate of Competency and to allow the SBA to decide whether or not to issue such a certificate despite the contracting officer's adverse determination. DPSC attached thereto the contracting officer's report.

In his findings contracting officer Crossin stated that although Related was a new bidder, its president and sole owner, Joseph J. Martin, had been nominally "consultant" but actually the chief operating official for Cecile Industries, Inc. (Cecile), a company with which DPSC had had a long history of unsatisfactory dealings and which had been previously rejected as a responsible bidder for prior awards. He stated that Martin had represented Cecile in all government contractual matters except for the execution of documents and owned the equipment used by Cecile. Further, Related proposed to use the same facilities and equipment as Cecile. He asserted that Martin had also previously received government contracts under other corporate names in addition to Cecile (Hunter Outdoor Products and Inflated Products) and had likewise performed them unsatisfactorily. He concluded that Related was being used as a device to subvert the regulations which govern awards to responsible bidders. The contracting officer attached to his findings a narration of terminations for default, delinquencies in deliveries, the invoking of warranties for defective quality workmanship and possibly fraudulent substitution of inferior materials in contracts performed by Cecile. Contracting officer Crossin's report and recommendation were also supplemented and supported in part by the reports of three other contracting officers who had dealt with Cecile and Martin. However, neither a copy of DPSC's letter of March 25 nor a copy of the contracting officers' reports was served on or furnished to plaintiff prior to the filing of the complaint of this case.

On March 28, 1983, Thomas Dumaresq, Coordinator, Certificate of Competency Program of the SBA, sent to Related a form letter, filled in by the underscored capitalized language, which stated in pertinent part:

You are hereby advised that the DLA, DEFENSE PERSONNEL SUPPORT CENTER PHILA. PA. 19101 intends to reject the bid of your company, despite being the apparent low bidder on IFB–DLA 100–83–B–0390 for SLEEPING BAG, INTERMEDIATE COLD, $7,027,-350.00.

The procuring agency has made this denial of award because there appears to be sufficient reason to question your company's capability to perform in a satisfactory manner. This adverse action has been referred to the Small Business Administration for resolution. SBA will perform an independent survey of your firm reviewing both financial and technical capabilities, to determine whether it considers your company to have the requisite competence to meet contractual requirements in a timely manner. If a decision favorable to your company is reached, SBA will issue a Certificate of Competency (COC). This then becomes binding upon the procuring agency and a contract is issued.

Procurement regulations permit only a brief time in which to process your application. It is required that you furnish this office with all the information, documents and data, as cited on the enclosed "Instructions". All such information, including SBA Form 74, 74B and 355, must be submitted by you in triplicate to reach this office not later than 9:00 AM on APRIL 5, 1983. If this information is not received by that time, the certification process is terminated immediately and the case is considered to be closed.

Applying for a COC involves a comprehensive review of your company by Financial and Industrial Specialists of this agency. They may require additional information and clarification as deemed necessary to substantiate your claim. It must be emphasized, however, that the burden of proof concerning competency rests with you.

This was the first written notice which plaintiff received with respect to the intention of the contracting officer to bar it from receiving the contract in question. The form letter did not elucidate or even refer to the specific allegations of fact upon which the contracting officer relied to question plaintiff's "capability to perform in a satisfactory manner."

Other than to state that the court shall give due regard to the interests of national defense and national security, § 1491(a)(3) does not set forth the standard to be applied in reviewing the actions of a contracting officer for purposes of determining whether or not to grant equitable relief to a bidder from such actions. For this we must look to the legislative committee reports on the Federal Courts Improvement Act of 1982, which added that subsection. The House committee report states (H.Rep. No. 312, 97th Cong., 1st Sess. 43–44):

[I]n the very vast majority of circumstances, the Government must be permitted to exercise its right to conduct business with those suppliers it selects and to do so in an expeditious manner. Yet, at the same time the Government must respect the rule of law. If it deviates from that norm it must be accountable for its actions in the courts, which are equipped with certain powers to redress proven wrongs. * * *

By conferring jurisdiction upon the Claims Court to award injunctive relief in the pre-award stage of the procurement process, the Committee does not intend to alter the current state of the substantive law in this area. Moreover, the Committee expects that the court will utilize the authority conferred upon it by this section only in truly extraordinary circumstances, as is required for the granting of equitable relief in all cases. The Committee intends the court to take great care not delay or prevent the award of contracts for goods or services which relate to the national defense and security.

The Senate committee report states (S.Rep. No. 275, 97th Cong., 1st Sess. 23, *reprinted in* No. 2 U.S.Code Cong. & Ad.News 11, 33 (Apr.1982)):

By conferring jurisdiction upon the Claims Court to award injunctive relief in the pre-award stage of the procurement process, the Committee does not intend to alter the current state of the substantive law in this area. Specifically, the Scanwell doctrine as enunciated by the D.C. Circuit Court of Appeals in 1970 is left intact. *See Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970). Moreover, the Committee expects that the court will utilize the authority conferred upon it by this section only in circumstances where the contract, if awarded, would be the result of arbitrary or capricious action by the contracting officials, to deny qualified firms the opportunity to compete fairly for the procurement award. The Committee intends the court to take care not to delay or prevent the award of contracts for goods or services which relate to the national defense or security.

■ Thus it may fairly be inferred that Congress intended that in deciding whether or not to grant equitable relief the court consider and determine—

1. Whether or not there has been a failure to respect the rule of law.

2. Whether the contracting officer's proposed award would otherwise be contrary to the substantive law as laid down in the *Scanwell* case.

In *Scanwell,* 424 F.2d at 874, the court held that the discretionary acts of a procurement officer are subject to review pursuant to the standards set forth in the Administrative Procedure Act at 5 U.S.C. § 706(2)(A). That subsection, and others obviously equally applicable, provide as follows:

The reviewing court shall—

*    *    *    *    *    *

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; .

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law * * *.

■ Unqualified and unrefuted evidence in the record establishes that contracting officer Crossin has stated that under no circumstances will he award any contract to Mr. Martin, the plaintiff, or any other company with which he is associated. This amounts to a *de facto* debarment of plaintiff and Mr. Martin. *Myers & Myers, Inc. v. United States Postal Service,* 527 F.2d 1252, 1258–59 (2d Cir.1975); *Art-Metal-USA, Inc. v. Solomon,* 473 F.Supp. 1, 4–5 (D.D.C.1978).

DAR 1–604.3 provides (32 C.F.R. 1–604.3 (1982)):

1–604.3  *Notice of Debarment*

(a) The firm or individual and its known affiliates concerned shall be furnished with a written notice of the proposed debarment, stating as a minimum:

(i) the fact that debarment is being considered;

(ii) the reasons for the proposed debarment; and

(iii) the period of time to be afforded to present information for consideration.

Information in opposition to a proposed debarment may be presented in person, in writing, or through representation. The period of time to be afforded to present information for consideration shall be limited to 30 days unless the subject of the proposed debarment requests additional time. * * * When no suspension is in effect under 1–605, the notice of proposed debarment shall state that no contracts will be awarded pending the debarment determination. If debarment is effected, the firm or individual shall be notified in writing within 10 days after

determination of debarment has been made. This notice shall:

(i) reference the earlier notice of proposed debarment;

(ii) specify the reasons for debarment;

(iii) state the period of debarment, including effective dates; and

(iv) advise that the debarment is effective throughout the Department of Defense.[3]

This procurement regulation has the force of law, *Paul v. United States,* 371 U.S. 245, 255, 83 S.Ct. 426, 433, 9 L.Ed.2d 292 (1963); *Scanwell Laboratories, Inc., supra,* 424 F.2d at 874, and as such it is binding on the Department of Defense. *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). It is clear that no such notice was given here.[4]

Even apart from the procurement regulations on debarment, the due process clauses of the fifth and fourteenth amendments require that a determination by governmental authority stigmatizing a person as so lacking in integrity that he is to be deprived of property or the liberty to enjoy rights which he would otherwise enjoy must be preceded by written notice of the facts upon which the charge is based and a reasonable opportunity to submit facts in response. *Perry v. Sindermann,* 408 U.S. 593, 601–03, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Old Dominion Dairy Products, Inc. v. Secretary of Defense,* 631 F.2d 953, 968–69 (D.C.Cir.1980); *Myers & Myers, Inc. v. United States Postal Service, supra,* 527 F.2d at 1258–60.

*Old Dominion Dairy Products, Inc., supra,* is a decision which is closely in point. Three contracting officers rejected the plaintiff's low bids for the supply of milk to government military bases because of a finding of nonresponsibility based on the lack of a "satisfactory record of integrity" in the performance of prior contracts (knowingly and substantially overbilling the government). However, they failed to give notice to the plaintiff of the specific instances of lack of integrity disclosed by their audits. The court of appeals first ruled that there were no grounds for overturning the decision of the district court, made after hearing three full days of testimony, that a reasonable basis did exist to justify the action of the contracting officers. Nevertheless, it then ruled that (631 F.2d at 968):

due process in this case includes the right to be *notified* of the specific charges concerning the contractor's alleged lack of integrity, so as to afford the contractor the opportunity to respond to and attempt to persuade the contracting officer, in whatever time is available, that the allegations are without merit. This requirement to give notice will impose absolutely no burden on the Government. Since a determination that a contractor lacks integrity may not be made without reference to specific charges or allegations, it will impose no burden on the Government to notify the contractor of those charges. In so doing, the contractor will at least have the *opportunity* to explain its actions before adverse action is taken. In this way, a simple misunderstanding or mistake may be clarified before significant injury is done to *both* the Government and the contractor. (Emphasis in original.)

Defendant argues that if plaintiff's claim asserts merely a violation of a liberty interest protected by the due process clause, this court lacks jurisdiction. Defendant is mistaken. Jurisdiction of the complaint is based on breach of an implied contract to consider plaintiff's bid fully and fairly. *United States v. Grimberg Co. and Schlos-*

---

**3.** Similar notice and opportunity to respond or request a hearing is required for a proposed suspension of a bidder for a limited period. DAR 1–605.3 (32 C.F.R. 1–605.3 (1982)).

**4.** In apparent recognition that the grounds relied upon by defendant for disqualification of plaintiff's bid require compliance with the debarment regulations, in its brief defendant states that on May 17, 1983, four days after the close of trial in this case, the General Counsel for the Defense Logistics Agency issued notices of such proceedings to plaintiff and Mr. Martin.

*ser Co.,* 702 F.2d 1362, 1367 (Fed.Cir.1983). Once that jurisdiction attaches the court is of course obligated to apply the applicable statutes and constitutional provisions. *See, Jackson v. United States,* 192 Ct.Cl. 765, 428 F.2d 844 (1970); *Swaaley v. United States,* 180 Ct.Cl. 1, 376 F.2d 857 (1967). Furthermore, since procurement regulations having the force and effect of law are deemed to be implied terms of all government contracts even if not mentioned therein (*Christian and Associates v. United States,* 160 Ct.Cl. 1, 11–12, 17, 312 F.2d 418, 424, 427 (1963), *rehearing denied,* 160 Ct.Cl. 58, 320 F.2d 345, *cert. denied,* 375 U.S. 954, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963); *Chris Berg, Inc. v. United States,* 192 Ct.Cl. 176, 182, 426 F.2d 314, 317 (1970)), surely the applicable provisions of the Constitution which are binding on the government are equally implied terms of such contracts.

Defendant argues that the requirement of notice was not applicable or was met because the contracting officer's determination was subject to review in this case by SBA. Mr. Thomas Dumaresq, the SBA Certificate of Competency Coordinator, testified, without contradiction, that in the course of his investigation he had several telephone discussions with Mr. Martin and spent most of one work day at the office of Related in Amityville, New York, where he examined documents and held further discussions with Mr. Martin. He is certain that as a result of such discussions he made Mr. Martin aware of the nature of the charges levelled against him by contracting officer Crossin.

However, defendant's arguments are insufficient to overcome the basic deficiencies in DPSC's procedures for several reasons:

1. Dumaresq conceded he never actually showed to Martin the detailed specific allegations of fact with respect to prior contracts.

2. Both the regulations on debarment and suspension and the cited authorities applying the due process clause require notice when the stigmatizing charges are made and not merely after the DPSC official has arrived at his determination. The evidence at trial warranted the inference that not all the delays, defaults and breaches of warranties enumerated in Crossin's report were wholly Cecile's or Martin's fault or necessarily reflected on their integrity, tenacity or perseverance. Several of the statements in the report were mistaken, e.g., with respect to the existence of a $944,560 claim by the government against Cecile, and the extent of and time when Mr. Martin owned interests in Hunter Outdoor Products and Inflated Products. The absence of notice of the specific factual charges deprived the plaintiff of the opportunity to correct mistakes and to present its side of the story to the contracting officer before adverse action was taken.

3. The regulations on debarment do not differentiate between the procedures applicable to bidders on contracts set aside for small businesses and other bidders.

4. The contracting officer's determination of lack of integrity, tenacity and perseverance was given presumptive effect and weight by the SBA. On April 22, 1983, SBA's Certificate of Competency Committee voted to deny a Certificate of Competency to Related because "Information contained in the case file is adequate to support a determination of nonresponsibility based on a lack of tenacity and perseverance and integrity" and because "Related has not supplied adequate information to overcome this determination," despite the absence of any support for this conclusion from its own investigators.[5]

The SBA files contain the survey reports of two investigators: Robert Paccione, industrial specialist, who spent a day at Related's North Adams, Massachusetts, premises and examined records and interviewed Joseph Martin, plaintiff's president, and John Miller, president of Cecile and Andrew Assante, general manager of Cecile; and

---

5. The Committee was also of the opinion that issuance of a Certificate of Competency to Related could not be recommended from a financial standpoint, although this was not the basis of DPSC's disqualification of plaintiff.

the aforementioned Thomas Dumaresq, who spent one day at Related's Amityville, New York, premises and another day at DPSC's headquarters, examining the pertinent files and interviewing various knowledgeable personnel at both locations.

With respect to technical ability, experience and availability to plaintiff and skilled personnel, Mr. Paccione's report states:

Mr. Joseph Martin is thoroughly familiar with the manufacture of the required sleeping bag. He has extensive past experience with the manufacture of not only sleeping bags but a variety of other similar type items. * * *

Based on discussion of manufacturing requirements and past experience * * * technical capability to produce the required sleeping bags is definitely established.

With respect to facilities and equipment, Paccione's report states:

Overall, facilities and equipment that will be used are satisfactory to support manufacture of the required sleeping bags.

With respect to personnel, he states:

Overall, there is definite assurance of the availability of skilled personnel.

With respect to production, he states:

Overall, after discussing manufacturing operations with the management of Related Industries and based on current and past reviews of existing sleeping bag lines, there is every assurance that Related will manufacture and deliver required sleeping bags in accordance with the solicitation delivery schedule.

In conclusion Paccione's report states that—

[B]ased on review of personnel, equipment, facilities and overall planning, Related Industries will be able to manufacture the complete solicitation requirement of 150,000 sleeping bags within the relatively ample delivery schedule of 270–570 days after date of award.

Dumaresq's report states *inter alia* that— [Related] * * * has demonstrated the technical capability to perform on this procurement.

Facilities and equipment are adequate and the firm has developed a quality inspection system in compliance with solicitation requirements.

All required materials are available in a timely manner.

* * * The production capability of the facility, equipment and personnel to be used has * * * been demonstrated.

With respect to the questions of lack of tenacity, perseverance and integrity, upon which the contracting officer based his determination, Dumaresq's report states:

[DPSC's] referral does not adequately place responsibility for poor performance at these other companies [Cecile Industries, Hunter Outdoor Products and Inflated Products] on Joe Martin.

\* \* \* \* \* \*

It is * * * clear that to hold Mr. Martin solely responsible for the performance of Hunter and Inflated is simply not possible based on the information available.

\* \* \* \* \* \*

While Cecile's tenacity, perseverance and integrity may be questionable, it is not apparent that these factors can easily be applied to specific individuals within the firm. This is particularly true in the case of Mr. Martin who is not an officer of the company.

\* \* \* \* \* \*

I believe that the actions of Mr. Martin, as described by the cited DPSC personnel, do not necessarily indicate that Mr. Martin was actually in control of Cecile.

\* \* \* \* \* \*

The exact nature and extent of Mr. Martin's activities at Cecile * * * can not be determined through this review.

Dumaresq also reported that contracting officer Crossin stated to him that his intention was not merely to deny the particular contract to Related, but that he also was not willing to award any contract to Cecile, Related or any firm in which Mr. Martin is involved. Dumaresq's conclusion was, however, that the "Information contained in

this referral regarding integrity and tenacity and perseverance * * * is not considered sufficient to justify denial of contract awards on a continuing basis to Cecile, Related and all affiliated companies and individuals."

Dumaresq's recommendation that Related be denied a Certificate of Competency was based on a ground not raised by the contracting officer, namely, that Related's financial condition was questionable.

Upon the record in this case the court has no basis to question the good faith of the contracting officer. However, it is also clear that he has failed to comply with regulations promulgated pursuant to law by his own department and has violated constitutional rights of plaintiff and Mr. Martin by failing to give them written notice of the factual allegations against them and by failing to allow them an opportunity to respond or to be heard prior to the contracting officer making his determination.

The nature of the proceedings hereinafter will depend on the charges contained in the notice to plaintiff and on the plaintiff's response. If defendant continues to insist that Mr. Martin's relationship to Cecile, Hunter Outdoor Products and Inflated Products taints him and any corporation he controls with lack of integrity, perseverance and tenacity, it seems evident that the proper procedures are those provided in DAR 1–600 to 1–610, having to do with Debarment, Ineligibility and Suspension, wherein the determination must be made by the authorized representative of the Secretary of the Army, rather than those provided in DAR 1–900, relating to Responsible Prospective Contractors, wherein the determination may be made by the contracting officer. In either event, the issue should not be merely whether Mr. Martin was associated with or participated in the dealings of Cecile and the others with the government, but whether or not his participation was such that it may fairly be concluded that he personally demonstrated lack of integrity, perseverance and tenacity.

It is clear that plaintiff has no adequate remedy at law with respect to the adverse actions of the DPSC. There is no evidence in the record that if the awarding of the contract at issue is postponed long enough to give plaintiff notice of the precise charges against it and an opportunity to respond and to allow the contracting officer to reconsider his decision in the light of such response, the national defense or national security will be adversely affected.

CONCLUSION

In view of the foregoing, judgment is to be entered as follows:

1. Defendant, including the Defense Personnel Support Center, the Defense Logistics Agency, its contracting officer and other officers, agents and employees are hereby enjoined from awarding any contract for sleeping bags pursuant to Solicitation 0390 to anyone other than plaintiff:

(a) Unless and until the contracting officer gives notice to plaintiff of specific facts upon the basis of which he proposes to disqualify plaintiff's low bid; and

(b) Unless and until plaintiff is given reasonable opportunity to respond to such charges; and

(c) Unless and until the contracting officer reconsiders his disqualification of plaintiff's bid in the light of such response; and

(d) If the contracting officer determines anew that plaintiff's bid should be disqualified because plaintiff corporation is controlled by Mr. Joseph Martin, unless and until plaintiff or Mr. Martin, or both, are properly debarred or suspended from receiving a government contract pursuant to the procedures set forth in DAR 1–600 to 1–610; and

(e) Unless and until plaintiff's disqualification is referred to SBA and SBA denies to plaintiff a Certificate of Competency.

2. Plaintiff's request for a declaratory judgment that it is the properly qualified low bidder on Solicitation 0390 is denied.

3. Except as set forth above, the complaint is dismissed.