**Horace Ray JACKSON**

v.

**The UNITED STATES.**

**No. 291–69.**

United States Court of Claims.
July 15, 1970.

---

Reginald H. Alleyne, Jr., Albuquerque, N. M., attorney of record for plaintiff.

Judith Yannello, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant. C. Michael Sheridan, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

This suit for back pay by a discharged civilian employee of the Government, a veteran, is before us on cross motions for summary judgment. We conclude that both motions must be denied because of an issue of material fact which demands further evidence for its resolution.

Plaintiff's employment was as a Teacher, GS–9, at the Job Corps Conservation Center, Grants, New Mexico. The Forest Service of the Department of Agriculture managed this institution, and its function was the education and training of disadvantaged youth. Plaintiff's discharge was effective one day before he had completed his probationary year, and as a result of this, the normal review processes of the Civil Service Commission were unavailable to him. But he believed the action to be racially motivated, and therefore complained of racial discrimination under Executive Order No. 11246 (30 Fed.Reg. 12319 (1965)). He is a Negro. The procedures applicable to such cases were followed: *ex parte* investigation by the Agency, Agriculture (5 C.F.R. § 713.214 (Supp.1967)), hearing by an Agency official, the Equal Employment Officer, or his designee (§ 713.216), decision (§ 713.219), Appeal

to the Board of Appeals and Review of the Civil Service Commission (hereinafter BAR) (§ 713.222), which reviewed the papers and affirmed without a hearing, as no new one was required (§ 713.224). The decision went against the plaintiff at all stages and this action followed.

██ The amended petition alleges that the discharge was "in violation of plaintiff's First Amendment right to petition the Government for redress of grievances * * *." While other possible grounds of illegality are not formally waived, plaintiff stresses them so slightly, and urges so little in their support, that we do not discuss them further, and deal with the action, as it practically is, solely to vindicate the First Amendment right.

This is a claim "founded upon the constitution" of which we have jursidicion by virtue of 28 U.S.C. § 1491(1), a jurisdiction we have exercised in a recent backpay suit similar to this one. Swaaley v. United States, 376 F.2d 857, 180 Ct.Cl. 1 (1967). Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), reasons along somewhat parallel lines and contributes to our belief that *Swaaley* was correctly decided. Plaintiff says *Swaaley* controls as a precedent. Defendant distinguishes it on the facts. That is the one issue this court must decide.

██ Plaintiff says he was fired because of a letter he had written to Mr. Harry Miller, who was a member of the Office of Inspection of the Office of Economic Opportunity (OEO), which in turn was part of the Executive Office of the President. The OEO had overall policy responsibilities respecting certain programs, including the Job Corps, even though actual operation was in the Forest Service, in the case of this Grants, New Mexico, Center. Mr. Miller had visited the Center in course of an inspection, talked to plaintiff, and invited him to communicate directly. Plaintiff could well have believed that Mr. Miller could redress his grievances or would bring the

letter to the attention of someone else who could.

Plaintiff wrote the letter soon after learning he would not be continued in his temporary post of Acting Principal Teacher, but would instead revert to ordinary teaching. The letter reports this to Mr. Miller and asks the OEO to look into it. If they had no jurisdiction, he was going to complain to the Civil Service Commission, OEO, NAGE (a union), American Legion, Governor of Texas, Senators and Representatives of Texas (he was himself of Texas origin), the United States President, and Civil Rights Organizations. He thought the Center should get rid of its Director and other officials to make it "run like it should." The Center needed assistance to get in line with "good policies and practices." Too many people in high positions had come from the other side of the tracks and had no understanding of the problems the "Black Boys have had to face."

This letter is less defamatory than Swaaley's in that supervisory officials are pictured as well-meaning bunglers instead of as crooks. That is not a significant distinction. If plaintiff had carried out his threat to scatter his complaints so broadcast, their credibility as petitions for redress of grievances would have been impaired, but he had not done so when fired. Some immoderation of expression might have been expected and discounted in light of plaintiff's deeply felt commitment, which the management level well understood, to the success of the Center in rehabilitating disadvantaged youth of plaintiff's race.

Plaintiff finds proof that he was fired as reprisal for this letter in the following circumstances: he testified at the hearing without contradiction that Mr. Figart, the Center Director, called him in and said he would terminate him before the probationary period was up because of the letter, saying "This letter will haunt you." The Director said, according to plaintiff, that he could not terminate plaintiff for inefficiency because he worked harder than anyone.

Mr. Figart was present at the hearing and also testified, having been called by plaintiff as an adverse witness. This was before plaintiff testified, but he must have been well aware of plaintiff's version of the conversation because it is included, substantially as testified to, in the report of the investigation made per § 713.214, *supra*, of which Mr. Figart was aware. In the same report there also appears Mr. Figart's version according to which he uttered the words "This letter will haunt you" with reference to another letter altogether. But he admitted he had a copy of the Miller letter at that time. This material is, of course, unsworn hearsay, and even when admitted in a nonjudicial hearing is of a low order of probative value. Jacobowitz v. United States, 424 F.2d 555, 191 Ct.Cl. 444 (decided April 17, 1970). Plaintiff argues that since Mr. Figart did not repeat it at the hearing, plaintiff's sworn testimony is uncontradicted and must be taken as true. The fact is, counsel on neither side asked Mr. Figart about the conversation, nor did the Examiner, and he volunteered nothing about it.

Defendant urges here that the burden of proof was on plaintiff and if he did not question Mr. Figart it must have been because he expected an unfavorable answer. Also, defendant says that the whole course of the testimony Mr. Figart did give showed that the true reasons why plaintiff was terminated were other things than the letter. But Mr. Figart said, *e. g.*, that plaintiff "was openly critical of the Forest Service, and some of the qualifications of the staff there at the Center." Here, and elsewhere, it is not clear whether the statement includes or excludes the letter.

Under all the circumstances, we do not think it fair to draw any inferences against either side because of the failure of anyone to interrogate Mr. Figart about the alleged conversation. The decisions of counsel to ask or not ask questions were made in a different proceeding than the one now before us, involving different issues, as we show more fully below. Thus plaintiff's testimony stands, without corroboration or refutation by Mr. Figart. Moreover, Mr. Figart could only recommend plaintiff's dismissal. The actual decision was made elsewhere and the person or persons who made it were not called. There is no evidence why they did what they did except that they had before them a memo written by Mr. Figart recommending dismissal on grounds other than the letter. The dismissal letter, signed by the Regional Personnel Officer, assigns grounds other than the letter. These are official Government records of some probative value, as to the basis of the official decision, if not for the external facts recounted.

Oddly enough the parties have ignored the fact that plaintiff, at the same time he sent the Miller letter, also sent one to a Mr. Johnson, which is in the record. Mr. Johnson was also of OEO. This letter is shorter than the Miller letter, equally bitter, and a little more explicit in charging that plaintiff was denied the Principal Teacher position because of racial discrimination. In fact, it alleges that racial discrimination is rampant at the Center. This is the letter Mr. Figart said would haunt the plaintiff, according to his statement reported by the Inspection Service. We mention it to avoid leaving any inference that we have held there is only one *Swaaley* type letter involved in this case. Actually there are two.

■ We do not think this case is properly a judicial review of an administrative decision. Because plaintiff was a probationer, the ordinary appeal to the CSC in adverse action cases would not lie. In the appeal actually taken, the only thing the finders and appellate tribunal had to consider was the alleged breach of Executive Order No. 11246. In that appeal, plaintiff was invoking procedures open only to members of certain races to protect them against discrimination. Here he invokes a provision of the Bill of Rights available to anybody, and his color becomes irrelevant. The Hearing Officer and the BAR quite properly made no findings whether plaintiff was

fired because of the letter or not. Possibly it might be held that firing a person for writing a letter complaining about racial discrimination was itself racial discrimination, but the Miller letter at least does not in terms make that complaint and no one seems to have thought of that theory. Thus it would appear that the cause as now advanced was outside the jurisdiction of the hearing examiner and the BAR. We note that the regulation has a clause against reprisal, § 713.213(b), but apparently it applies only to reprisal against one who had actually invoked the procedure, which the plaintiff, when fired, had not yet done.

■ The BAR, it is true, did gratuitously go outside the issues before it to consider *Swaaley,* because plaintiff was urging it to do so. It said that plaintiff could not invoke *Swaaley,* because he was a probationer. This is obviously incorrect: the constitutional protection of employees against removal because of petitioning for redress of grievance does not depend on the particular employee's status or tenure. Moreover, the BAR continued, plaintiff here, unlike in *Swaaley,* was not accused of making "unfounded" statements against agency officials. Of course, Mr. Swaaley did not enjoy First Amendment protection because he made unfounded statements, but in spite of it. If, however, the BAR means that an agency, incensed over an employee's petition for redress of grievances, may fire him without regard to the *Swaaley* precedent, simply by saying it is firing him for some other alleged reason, the statement is its own refutation.

■ Accordingly, we think it is incumbent on us to determine *de novo* whether the reason for plaintiff's firing was his letter to Mr. Miller, either by itself or in association with other things. Defendant admitted in oral argument that the *Swaaley* precedent would govern if plaintiff should prevail on that issue. Plaintiff asserts, and defendant denies, that he was fired for that cause. Yet both sides urge that there is no dispute of material fact.

In view of the foregoing, and fully respecting the wish of the parties to have the case decided on the administrative record, we are unable to hold that there is no genuine issue of material fact, in view of the record, with respect to whether or not plaintiff was discharged as a reprisal for exercising his First Amendment right to petition for redress of grievances. This is the key fact issue in the case and before a decision is possible it must be resolved by trial. Therefore, both motions for summary judgment are denied and the case is remanded to the commissioner for further proceedings.