Kunzig, Judge,
delivered the opinion of the court:
This First Amendment-civilian pay case is before the court as a matter of first impression. Ronald Featheringill (plaintiff) had been hired to teach in the high school located on Misawa Air Base, Japan, for the school year 1974-75; his appointment expired, by its terms, on June 6, 1975. Plaintiff was not rehired for the following year and now claims that he was entitled to be rehired and also entitled to be converted to an indefinite appointment. He had been initially hired for a term "not to exceed” (NTE) one year. Plaintiff bases his claim both on the Back Pay Act, 5 U.S.C. § 5596 (1976) and on the First Amendment to the Constitution. Because we conclude that plaintiff never occupied nor had any entitlement to the job he seeks (appointed indefinite teacher or rehired NTE teacher), we find his claim to be without merit under the Back Pay Act and we hold that under the facts of this case, this court is without jurisdiction to consider plaintiffs constitutional claim.[1]
In the context of a motion to dismiss, we accept the facts alleged by plaintiff as true. Those facts essential to this case may be briefly stated: Plaintiff was initially hired overseas and was employed by the U.S. Air Force for the school year 1974-75 as an English teacher at the Dependents’ High School, Misawa Air Base, Japan. The appointment was for a period not to exceed one year and bore an expiration date of June 6, 1975. Though plaintiff expected to be rehired for the following year or given an indefinite appointment, neither event occurred. Instead, he received an unsatisfactory performance rating which we must assume (in the "motion to dismiss” posture of the case) to *27 have been at least in part the result of an incident occurring on April 7, 1975. On that date, plaintiff and another faculty member circulated a one-page notice addressed to "Parents concerned about quality education,” informing the parents that a substantial reduction in size of the faculty was being planned. Plaintiff alleges that the displeasure of his superiors over that notice was reflected in his unsatisfactory performance report.
Plaintiff leads into his back pay argument by contending that his unsatisfactory performance report is invalid (since, he maintains, it failed to comply with provisions of the Performance Rating Act).[2] He further argues that the report penalized him for the exercise of speech protected by the First Amendment. Plaintiff asserts that, but for the unsatisfactory performance report, he was entitled to be rehired (assuming there was a vacancy) and concludes that the decision not to rehire him, based on an invalid performance report, constituted an unjustified personnel action which entitles him to relief under the Back Pay Act[3] or under the First Amendment.
We pass by the question whether the unsatisfactory performance report was invalid; indeed, we assume, for purposes of this motion to dismiss, that it was invalid. The more basic issue which we must address is whether the performance report, even if invalid, helps the plaintiffs cause. Defendant vigorously disputes plaintiffs contention that, but for the rating, he would have been rehired. *28 Defendant’s position, in short, is that this is simply not a back pay case at all because plaintiff never held and was never entitled to hold the position for which he seeks pay (rehired NTE teacher or appointed indefinite teacher); instead, defendant maintains, plaintiff was fully paid for the one year NTE appointment he did hold. Taking the Back Pay Act out of the case, the defendant contends that the discretionary decision not to rehire, even if based upon an improper rating and even if it infringes First Amendment rights, does not support a suit for money damages in this court by a plaintiff who never held the job he seeks, is owed no money, and cannot show entitlement to any money.
Plaintiffs attorney met the defendant’s case head-on, suggesting four approaches whereby plaintiff might come under the Back Pay Act and then arguing, in the alternative, that this court does have jurisdiction to hear the constitutional claim. Despite plaintiffs able presentation, and for reasons which follow, we agree with defendant. Since plaintiff never held and was never entitled to the position he seeks, and is owed no money, this is not a back pay case and the First Amendment issue raised in this context is beyond the jurisdiction of this court.
Plaintiff maintains that his claim is allowable under the Back Pay Act for four specific reasons: plaintiff argues that (1) there are regulations which mandate the rehiring of NTE teachers; (2) the regulations mandate the conversion of NTE teachers to indefinite appointee status; (3) there exists a practice by which NTE teachers are routinely rehired and converted, and (4) it is, in any event, an improper personnel action to base a decision to rehire on an incident arising out of constitutionally protected speech.
First, we find that the regulation upon which plaintiff relies[4] does not mandate the rehiring of NTE teachers. It *29 does concern hiring priorities and it does say that NTE teachers may be converted to indefinite status (and, by obvious implication, rehired). DoD Directive 1400.13, para. IV(C)(1). Nowhere does it say that NTEs will be converted. The word "may” is used with respect to conversion, and it is a strained interpretation which says that the choice of that word is anything other than deliberate. The referenced regulation, para. IV (C), begins by saying that "the following order of priority will be used” (emphasis added) and then describes the priority categories. With respect to every category but the one which concerns the conversion of NTE teachers, the operative expression is that preference will be given. DoD Directive 1400.13, para. IV(C)(2); (C)(3); (C)(4); (C)(5). The word "may” is conspicuous by its presence in the vital provision relied upon by plaintiff and can only mean that the conversion of teachers is a discretionary act. The drafters of the regulation clearly knew how to say "will” when they meant to eliminate discretion. Thus, the order of priority regulation does not mandate either the conversion of NTE teachers or their rehiring.
Secondly, we find that the other subsection of the regulation upon which plaintiff relies[5] does not mandate *30 the conversion of NTE teachers as he argues. The regulation states that a teacher "who is hired” and who has one or more years’ experience in the dependents’ schools will be given an indefinite appointment. DoD Directive 1400.13, para. IV, (E)(l)(a)(2). (emphasis added) For the plaintiff to fit under this section, the language, though perhaps inartfully drawn, requires (by using the conjunctive "and”) that the NTE teacher must have completed his temporary limited appointment prior to his subsection (a)(2) hiring. Thus, this regulation only applies after the teacher has been hired to teach for a second year. Though, at first blush, it may seem to mandate the automatic conversion of NTE teachers, the regulation contains conditions precedent not met by plaintiff and nowhere entitles him to be hired again. Clearly, if there be any reason in common sense for the existence of an NTE-type position, this reason would be obviated by a mandatory conversion as plaintiff demands.
The regulations relied upon by plaintiff cannot be reasonably construed to support plaintiffs first and second positions. We have searched in vain for regulations that might do so. We have found none. The "order of priority” regulation does not mandate either the hiring or conversion of NTE teachers and, while the other regulation may conceivably be interpreted as mandating conversion of rehired NTEs, it does not mandate the rehiring upon which conversion depends. Having thus dealt with points one and *31 two, we turn now, briefly, to plaintiffs third and fourth positions under the Back Pay Act.
Though plaintiff looks to a routine rehiring and conversion practice (his third point) and assuming for purposes of this motion that said practice exists, he still cannot show a withdrawal or reduction in pay such as is required by the Back Pay Act. We have held the Back Pay Act not applicable in situations where there has been no withdrawal or reduction in pay. e.g., Peters v. United States, 208 Ct.Cl. 373, 534 F.2d 232 (1975); Bielec v. United States, 197 Ct.Cl. 550, 456 F.2d 690 (1972). Plaintiff Featheringill has not been reduced in pay, nor was he deprived of his NTE appointment — he served the full year and received full salary. He simply was not rehired and is, thus, seeking a position other than the one to which he was appointed.
True (as plaintiff argues) both NTE and indefinite appointee teachers are "full-time classroom teachers,” but the two appointments are not the same. One obvious difference is that the NTE is clearly time-limited, and, crucial to this case, plaintiffs NTE appointment has expired. In the somewhat analogous context of military reenlistments, this court has repeatedly held there to be no right (absent a statute or regulation) to reenlist. e.g., Austin v. United States, 206 Ct.Cl. 719, cert. denied, 423 U.S. 911 (1975); O’Callahan v. United States, 196 Ct.Cl. 556, 451 F.2d 1390 (1971). The fact that a routine practice may or may not exist does not alter this result.[6]
Plaintiffs fourth, and last point under the Back Pay Act (to the effect that it is an improper personnel action to base a decision to rehire on an incident arising out of constitutionally protected speech) also lacks the element of *32 loss of pay. Again, as with his third point, plaintiff cannot be heard to say that his pay has been wrongfully withheld or reduced where he has simply not been re-employed.
The final question which we must address is whether, as an alternative to the Back Pay Act, this court has jurisdiction to award relief, in this case, based on the First Amendment alone.
It is not relevant to our jurisdictional inquiry in the Court of Claims that plaintiff might well have a compelling First Amendment claim within the jurisdiction of a federal district court. See Mt. Healthy Board of Education v. Doyle, 429 U.S. 274 (1977); Perry v. Sindermann, 408 U.S. 593 (1972); Pickering v. Board of Education, 391 U.S. 563 (1968). A suit, even one which may "intimately involve the Contitution,” is beyond the jurisdiction of this court unless based on a provision that "command[s], in itself and as correctly interpreted,'' the payment of money to the claimant * * * [W]hat one must always ask is whether the constitutional clause . . . which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.” Eastport S.S. Corp. v. United States, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967).
In those instances where this court has discussed back pay claims in the context of the First Amendment, the claimants had been dismissed from their jobs and the suits were maintained on the factual basis of improper removal. e.g., Jackson v. United States, 192 Ct.Cl. 765, 428 F.2d 844 (1970); Swaaley v. United States, 180 Ct.Cl. 1, 376 F.2d 857 (1967). It does not follow, as plaintiff argues, that these cases stand for the broader proposition that the Constitution itself creates a right of action against the Government in this court for violations of First Amendment rights where, as here, there has been no removal nor reduction in pay.
This is a court of limited subject matter jurisdiction, and even where a substantive right may exist, such a right does not of necessity mean that money damages are available here to redress its possible violation. See United States v. Testan, 424 U.S. 392 (1976). It is not for us to extend our jurisdiction beyond that ambit marked by our jurisdic *33 tional grant. We are bound to apply the law as we find it. We have previously held that the due process clause of the Fifth Amendment does not expressly grant a money remedy and may not serve as a jurisdictional basis for a suit in this court. Walton, supra; Muehlen, supra. We now hold that the First Amendment (standing alone, in a situation such as the instant one, where plaintiff never held and was never entitled to hold the job he seeks) no more mandates the payment of money than does the due process clause and, thus, may not serve as a jurisdictional basis for plaintiffs law suit.
In summary, we have found that plaintiff is seeking a position other than the one to which he was appointed. Because plaintiff never occupied nor had any entitlement to the job he seeks, and is not owed any money, we hold that his claim is without merit under the Back Pay Act. Because the First Amendment, standing alone, does not expressly command the payment of money, we hold that we are without jurisdiction to consider plaintiffs constitutional claim.
Accordingly, upon consideration of the parties’ submissions, and after oral argument, defendant’s motion to dismiss is granted, and plaintiffs petition is dismissed.

 The court, in deciding this case for defendant, has not found it necessary to consider the defendant’s affidavits and so declines the Government’s invitation to turn its motion to dismiss into a motion for summary judgment.

 5 U.S.C. §§ 4301-4308 (1976). Section 4304(b) provides, in pertinent part, that "[a]n employee may be rated unsatisfactory only after a 90-day advance warning and after a reasonable opportunity to demonstrate satisfactory performance.”

 5 U.S.C. § 5596 (1976). The statute provides as follows: § 5596. Back pay due to unjustified personnel action
(b) An employee of an agency who, on the basis of an administrative determination or a timely appeal, is found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay, allowances, or differentials of the employee—
(1) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect an amount equal to all or any part of the pay, allowances, or differentials, as applicable, that the employee normally would have earned during that period if the personnel action had not occurred, less any amounts earned by him through other employment during that period;

 DoD Directive 1400.13 (Air Force Supplement to Basic Federal Personnel Manual), Feb. 1, 1974. Paragraph IV of the regulation provides, in pertinent part:
IV. POLICY
* * * * *
C. .Recruitment of Teachers. The following order of priority will be used in filling positions with the DoD Overseas Dependents’ Schools System:
1. Locally hired school teachers who have satisfactorily completed one year (at least 150 days) of teaching in the Department of Defense Overseas *29 Dependents’ Schools System on a temporary limited appointment (NTE) may be converted to an indefinite appointment.
2. Second preference will be given to teachers within a geographical area, i.e., intra-area transfer. Within this category, preference will be given to teachers in remote areas.
3. Third preference will be given fully qualified and recommended teachers from another geographical area, i.e., inter-area transfer, in accordance with instructions issued by the ASD(M&RA).
4. Fourth preference will be given to fully qualified locally available teachers who can reasonably be expected to be at the location of the school for the full school year. Preference will be given to fully qualified dependents of military and civilian personnel who are stationed in the area. If a locally available non-dependent candidate has clearly superior qualifications, an exception to this requirement may be authorized by the Area Superintendent. Such exceptions will be carefully controlled and will be authorized only when the non-dependent’s educational background, specialized experience, and credentials are clearly superior. Appointments will be in accordance with paragraph IV.E.l.a., of this Directive.
5. Any remaining vacancies will be filled through recruitment in the United States.

 DoD Directive 1400.13 (Air Force Supplement to Basic Federal Personnel Manual), Feb. 1, 1974.
IV. POLICY
*30 E. Personnel Actions. 1. Actions Affecting Teachers
a. Appointments. Appointments will be made under Schedule A, Section 213.3106(b)(1), of the Civil Service Commission Regulations (reference (b)) and in full recognition of applicable civil service appointment requirements and regulations of the Military Departments concerned.
*****
(2) A teacher who is hired in an oversea area for a full-time teaching position for a full school year, and who has satisfactorily completed one or more years of teaching in the DoD Overseas Dependents’ Schools either in an indefinite appointment or a temporary limited appointment (NTE) will be given an indefinite appointment, provided he agrees to transfer to another location if necessary and consistent with the needs of the services, to the same extent as those teachers who are recruited from the United States. Teachers who refuse transfers when required for the good of the service will be separated.

 At oral argument, plaintiff fleshed out his "routine practice” argument to include something akin to the reasonable expectancy of re-employment which the Supreme Court spoke of in Perry v. Sindermann, 408 U.S. 593 (1972). To the extent that Sindermann depends on the 14th Amendment due process clause, this court is without jurisdiction to pursue the matter because the analogous Fifth Amendment provision does not in itself obligate the Federal Government to pay money damages. Walton v. United States, 213 Ct. Cl. 755 (1977); Muehlen v. United States, 209 Ct.Cl. 690 (1976). See Eastport S.S. Corp. v. United States, 178 Ct.Cl. 599, 372 F.2d 1002 (1967).
To the extent that Sindermann depends on the First Amendment, we are, in the instant case, likewise powerless to follow. See our discussion, infra.