**Lawrence R. ROSANO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 200–85C.**

United States Claims Court.

Nov. 6, 1985.

---

Lawrence R. Rosano, pro se plaintiff.

George M. Beasley, III, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. David M. Cohen, Director, Washington, D.C., of counsel.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

This is a suit brought by a terminated probationary civilian employee of the United States Navy for back pay, reinstatement, refund of part of his health insurance premiums paid during his employment, and an incentive award. The government has moved for summary judgment, arguing the court lacks jurisdiction to award judgment on such claims, and that, in any event, the back pay and reinstatement claims are barred as res judicata by prior decisions adverse to plaintiff.

I.

In November 1979, the Department of the Navy, Marine Corps, appointed plaintiff, a civilian, as a GS–11 engineer at Camp Pendleton. Plaintiff was a career conditional appointee, and was subject to a one-year probationary period. During his first days on the job, plaintiff was offered the opportunity, like all federal employees, to join the Federal Employees Health Benefits Program (FHP). The program lets federal employees choose a health insurance plan from among a group of plans preselected by the Office of Personnel Management (OPM). Under the FHP, the employee contributes a portion of the premium, and the government pays the remainder.

Plaintiff discovered that all the available plans included coverage for abortion and contraception. Opposed to these procedures on religious grounds, plaintiff requested a plan that did not provide such coverage. None being available, he asked either to have his premium prorated to exclude that portion which pays for the objectionable coverage or to have the government contribute its share to the premium cost of private insurance coverage. Plaintiff was informed that the FHP makes no provision for reduced premiums or contribution to insurance plans outside the FHP. He was told he could only choose a plan as provided or forgo coverage and the government contribution. Plaintiff complained that this choice—accept a plan that "funded" abortion or be denied health insurance—violated his first amendment rights. However, desiring health insurance benefits, he nevertheless enrolled in the Blue Cross-Blue Shield plan.

Plaintiff consulted with a Marine Corps Equal Employment Opportunity (EEO) counselor regarding his allegations of religious discrimination. The EEO counselor informed plaintiff that he could pursue an EEO complaint or he could file a complaint on his own with the Merit Systems Protection Board (MSPB). He was advised to choose the MSPB route because the Navy EEO office at Camp Pendleton had no authority to change the FHP.

Plaintiff submitted his complaint to the Special Counsel of the MSPB, which informed him on April 7, 1980 that it was not authorized to pursue his complaint because there was no indication that any personnel practice or other activity prohibited by the Civil Service provisions had occurred.

After April 7, plaintiff concedes that he continually spent most of his official work time preparing a new complaint and responding to the Special Counsel's letter, and that his supervisors warned him that the time he was devoting to his complaint was excessive.

Plaintiff's petition reveals that despite these, and subsequent admonitions, after April 10 he continued to pursue his complaint substantially to the exclusion of his engineering duties. On May 20, his immediate supervisor recommended he be terminated during his probationary period. The primary reason given was plaintiff's inability to complete research projects within reasonable time; numerous instances of plaintiff taking more than two to three times the time estimated to be necessary were noted. Additionally, his supervisor stated that plaintiff's engineering knowledge and experience were proving inadequate, and that plaintiff was unable to schedule his time or judge the degree of complexity required. On May 23, 1980 plaintiff was notified in writing that he was terminated effective May 30.

Plaintiff filed an informal EEO complaint with the Marine Corps EEO office at Camp Pendleton. After interviewing plaintiff, his supervisors and co-workers, the EEO counselor concluded that there was no evidence of religious discrimination. A formal EEO investigation subsequently concluded that there was no discrimination and "[t]he complainant was removed solely because he was deficient in the performance of his assigned duties as a civil engineer."

Plaintiff also had appealed his termination and his constitutional complaint about the FHP to the MSPB. The MSPB held it was without jurisdiction to review the termination of a probationary employee for religious discrimination, and did not address the constitutional issue. Its order was upheld by the full Board on December 12, 1980. *Rosano v. Department of the Navy*, 4 M.S.P.B. 516, 4 M.S.P.R. 566 (1980).

Plaintiff appealed the Board's decision to the United States Court of Claims, which upheld the termination decision but remanded for the MSPB to consider his additional constitutional claim for award of a sum equal to the value of the government's contribution to his health insurance premiums during the period of his employment. *Rosano v. United States Marine Corps*, 229 Ct.Cl. 780 (1982) (*Rosano I*). On remand, the Board held it lacked jurisdiction to consider plaintiff's objections to the health plans selected under OPM's discretionary authority to contract with qualified carriers of group health insurance plans. *Rosano v. United States Marine Corps*, 10 M.S.P.B. 67, 11 M.S.P.R. 79 (1982). That decision was affirmed by the Court of Appeals for the Federal Circuit. *Rosano v. Department of the Navy*, 699 F.2d 1315 (Fed.Cir.1983) (*Rosano II*).

Plaintiff then instituted suit in the United States District Court for the Southern District of California, under 42 U.S.C. § 2000e–16, the provisions of the Civil Rights Act protecting government employees from employment discrimination. He contested his separation from federal employment and alleged religious discrimination and failure of the government to accommodate reasonably his religious beliefs. He sought back pay, reinstatement to his position, damages, costs and attorney's fees, and a finding that, as abortion is murder, his actions to prevent its "funding" were justified. The District Court granted the government's motion for summary judgment without opinion. *Rosano v. Secretary of the Navy*, Civ.N. 82–0987–JLI(H) (S.D.Calif.1983). The United States Court of Appeals for the Ninth Circuit affirmed the judgment in an unpublished opinion, holding that plaintiff's termination as a probationary employee was not due to religious discrimination because Rosano conceded that he devoted his work time

almost exclusively to his abortion concerns, that he spent more than the estimated time on his assigned projects, and that his superiors had warned him about his lack of output. The court stated that any inference that plaintiff had been terminated because of unlawful religious discrimination was negated by the absence of any material issue of fact concerning Rosano's lack of satisfactory job performance prior to the termination of his employment, and that an employer's obligation to make reasonable accommodations to an employee's religious beliefs does not include an obligation to pay him full salary when the employee spends the majority of his time on matters other than his work assignments. *Rosano v. Secretary of the Navy*, 735 F.2d 1372 (9th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984) (*Rosano III*).

In his 185 page complaint, consisting of 702 paragraphs and 36 prayers for relief, plaintiff continues to seek back pay and reinstatement (at a higher grade and new location). He further asks for a refund of that part of his insurance premiums that went to "fund" abortion, and for payment to him of an award he claims is his due for his suggestion that the United States Government would save millions of dollars by deleting abortion and contraception coverage from its employee health benefits program. He again asks for costs and attorney's fees, and damages (including free federal health insurance indefinitely). He also asks the court for declaratory relief on several points, including: that the First Amendment prohibits governmental funding of abortion in the group health insurance program for federal employees; that abortion is murder; that his termination violated the free exercise, free speech and. establishment clauses of the First Amendment; that the government violated his right to follow the Code of Ethics; that contraception is constructive murder; that busing is unconstitutional; that abortion and contraception are religious practices which the government may not fund; that pornography is unconstitutional; that prostitution is unconstitutional; that

school prayer is constitutional; that tax-exempt status for clinics providing abortion and contraception services is unconstitutional; that homosexuality is unconstitutional; that euthanasia is unconstitutional.

## II.

■ The Claims Court historically has no general jurisdiction to issue declaratory judgments. *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Two express statutory exceptions, 28 U.S.C. § 1491(a)(3) (declaratory judgment authorized to afford complete relief on a contract claim) and 28 U.S.C. § 1507 (declaratory judgment authorized regarding Internal Revenue Code section 7428), obviously do not apply. Therefore, plaintiff's only claims which are arguably within the Tucker Act are those wherein plaintiff seeks money: the back pay claim for wrongful termination, the premium refund claim, and the bonus award claim.

■ For this court to have jurisdiction to render judgment in favor of plaintiff upon any of his claims, such claim would have to assert that the federal government took money or property from him in contravention of the Constitution, a statute or a regulation, or, alternatively, the claim would have to be founded upon some provision of the Constitution, federal statutes or regulations of an executive department that confers on a claimant, expressly or by fair interpretation, a substantive right to recover money from the United States. 28 U.S.C. § 1491; and *United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1975); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002 (1967).

A. *The Back Pay Claim for Wrongful Termination.*

■ Plaintiff argues that his termination was improper because it was the product of religious discrimination. However, as already noted, that issue has al-

ready been decided adversely to plaintiff. In *Rosano I* the Court of Claims and in *Rosano III* the district court and the Court of Appeals for the Ninth Circuit decided that plaintiff had been terminated for cause and not because of religious discrimination. Plaintiff had full and fair opportunities to litigate this issue and is now barred by the law of collateral estoppel and res judicata from relitigating them anew merely because another forum is available. *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Blonder-Tongue v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). In his complaint plaintiff asks that *Rosano III* "be reexamined and overruled." But this court does not have jurisdiction to review the decisions of other courts. *City Development Co. v. United States*, 220 Ct.Cl. 730, 618 F.2d 122 (1979).

Apart from the bars of collateral estoppel and res judicata, plaintiff's claim for improper termination of employment because of religious discrimination must be dismissed because jurisdiction of such a suit lies exclusively in a United States district court. Section 717 of the Civil Rights Act of 1964, as added by § 11 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(c) and 2000e–5(f)(3), and *Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). And see also *McGee v. United States*, 5 Cl.Ct. 480, 481 n. 1 (1984); *Fernandez v. United States*, 227 Ct.Cl. 601 (1981); and *Allison v. United States*, 211 Ct.Cl. 332, 546 F.2d 430 (1976).

Finally plaintiff's claim to back pay must be dismissed, because, since the effective date of the Civil Service Reform Act of 1978, Pub.L. 95–454, 92 Stat. 1135 (5 U.S.C. § 7511 *et seq.*) (CSRA), this court has had no jurisdiction of claims for redress of adverse actions against probationary employees. *United States v. Connolly*, 716 F.2d 882, 886–88 (Fed.Cir.1983), *cert, denied* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). And *see also U.S. Dept. of Justice v. Federal Labor Rel. Auth.*, 709 F.2d 724, 728 (D.C.Cir.1983).

The Senate committee report on the Civil Service Reform Act states (S.Rep. No. 969, 95th Cong., 2d Sess. 45 (1978), *reprinted in* 1978 U.S.Code & Cong.Ad.News 2723, 2767):

> The probationary or trial period * * * is an extension of the examining process to determine an employee's ability to perform the duties of the position. It is inappropriate to restrict an agency's authority to separate an employee who does not perform acceptably during this period.

The court in *Connolly* concluded therefore that (716 F.2d at 886):

> the legislative history of the Reform Act entirely forecloses the possibility that probationary employees have some sort of unspecified private right of action in the Claims Court under the Act to seek judicial review of their removals.

> \*     \*     \*     \*     \*     \*

Because Congress could have permitted probationers to challenge removals, but expressly declined to do so, we find it incongruous to suppose that appellee has an implied private right of action under the Civil Service Reform Act to seek judicial review of his dismissal.

As for plaintiff's contention that the assertion of a claim of violation of the First Amendment to the Constitution confers the required substantive jurisdiction on this court, it suffices to say that violation of the First Amendment does not state a claim within the jurisdiction of the Claims Court, as "except for the taking clause of the fifth amendment the other amendments do not require the United States to pay money for their alleged violation." *Elkins v. United States*, 229 Ct.Cl. 607, 608 (1981), and see also cases cited therein. *Accord United States v. Connolly*, 716 F.2d, at 887–88.

In support of his contention that the Claims Court has jurisdiction of his claim, plaintiff cites *Kennedy v. United States*, 5 Cl.Ct. 792 (1984). *Kennedy* in turn relies on the decisions in *Jackson v. United States*, 192 Ct.Cl. 765, 428 F.2d 844 (1970) and *Swaaley v. United States*, 180 Ct.Cl. 1,

376 F.2d 857 (1967), wherein the Court of Claims entertained suits in which probationary employees claimed that they were dismissed in retaliation for their exercise of free speech. The Claims Court, in *Kennedy*, finding that *Connolly* had not overruled either *Jackson* or *Swaaley*, concluded that the Claims Court still has jurisdiction over constitutional claims where the probationers has no other available judicial recourse or review.

■ This court declines to apply the rationale of *Kennedy* here, because plaintiff had available other judicial recourse, which in fact he utilized. *See Rosano III.* In addition, the Court of Claims has held that the unavailability of another judicial forum is irrelevant to the jurisdictional inquiry. *Featheringill v. United States*, 217 Ct.Cl. 24, 32 (1978).[1]

This court also believes that *Kennedy* is in conflict with the understanding of the Federal Circuit in *Connolly* as to the jurisdictional basis of *Jackson* and *Swaaley*. The circuit court expressly determined that jurisdiction in *Jackson* and *Swaaley* was based not at all on the fact that those claims were of constitutional dimension, but rather on the statutory entitlement to pay afforded by the basic pay statute. *Connolly*, 716 F.2d at 888. Once jurisdiction was obtained, the court could also consider the constitutional claims. *Jackson* (1970) and *Swaaley* (1967) pre-date the effective date of the Civil Service Reform Act of 1978, by which, the circuit court concluded, Congress effectively removed the pay statute as an independent ground for jurisdiction when it purposefully eliminated any review of probationary employee dismissals. *Id.* at 887. If the basic pay statute, on which the Court of Claims relied, still conferred jurisdiction, federal employees could maintain suit here without regard to the comprehensive system of review set out by Congress. That result would be plainly inconsistent with the decision in

*Connolly.* For that reason, this court concludes that *Jackson* and *Swaaley* no longer support Claims Court jurisdiction; by the intervening statute, Congress has negated their current application.

### B. *Refund of Insurance Premium.*

■ Since plaintiff chose to pay his health insurance premiums voluntarily and the federal government acted only as a conduit for turning over the premiums to the carrier, the substantive jurisdiction of the court to award to plaintiff a money judgment against the government cannot be based upon the government having taken plaintiff's money in contravention of the Constitution, a statute or a regulation. Thus plaintiff must find some provision of the Constitution, or a statute or regulation which confers upon him a right to compensation or damages.

Plaintiff's claim that the inclusion of coverage of abortion risks in his health insurance premiums violates his First Amendment rights does not confer upon him a substantive right to compensation from the federal government, for, as previously noted, the First Amendment does not, expressly or impliedly, provide for payment of money damages and cannot of itself provide plaintiff with a cause of action for money damages absent some other jurisdictional basis. *Elkins v. United States, supra;* and *United States v. Connolly, supra.*

■ Nor is Mr. Rosano's claim founded on the Health Benefits Act, 5 U.S.C. §§ 8901–13, for it is not brought to enforce a specific right or obligation under that Act. No provision of such Act provides expressly for payment of compensation to a federal employee for unwanted coverage in health insurance premiums voluntarily paid, and it may not reasonably be concluded that it is implied. A decision illustrative

---

1. The United States Claims Court must accept the decisions of the United States Court of Claims as binding precedents unless and until modified by decisions of the United States Court of Appeals for the Federal Circuit or the United States Supreme Court. United States Claims Court General Order No. 1, October 7, 1982, 1 Cl.Ct. XXI; *South Corp. v. United States*, 690 F.2d 1368 (Fed.Cir.1982).

of that principle is *National Treasury Emp. Union v. Campbell*, 589 F.2d 669 (D.C.Cir.1978). There the court held that in the Health Benefits Act Congress had consented to suit to review the conduct of the Civil Service Commission in failing to discharge its statutory duty to negotiate reasonable rates equitably reflecting the cost of the benefits provided. But with respect to a concurrent claim for money damages the court stated that "nothing in our jurisdiction or reviewability holdings in any way leads to or even supports the conclusion that damages either were actually contemplated by Congress or flow logically from the structure or content of the statutory scheme. * * * That Congress has consented to suit, in short, does not mean that it has validated every conceivable cause of action and claim for relief which counsel can construct." *Id.* at 679.

Plaintiff contends that jurisdiction over this claim is conferred upon the Claims Court by 5 U.S.C. § 8912, which provides:

§ 8912. *Jurisdiction of courts*

The district courts of the United States have original jurisdiction, concurrent with the United States Claims Court, of a civil action or claim against the United States founded on [chapter 89—Health Insurance].

■ However, while this section confers jurisdiction over the parties, it does not confer jurisdiction to award a money judgment on any claim which is not otherwise provided for by the Health Benefits Act. Section 8912 of Title 5 is identical to 5 U.S.C. § 8715, which pertains to Federal Employees Group Life Insurance. In *Walker v. United States*, 161 Ct.Cl. 792, 798–99 (1963), the court held that § 8715 does not add to the court's existing Tucker Act jurisdiction pursuant to 28 U.S.C. § 1491, but was enacted merely to enable making the United States a party to a court action in a district court, which would otherwise have been barred by the $10,000 limitation on suits against the United States in such court. 28 U.S.C. § 1346(b). Accordingly, the court held that Tucker Act claim for insurance benefits not expressly or impliedly provided for by the Life Insurance Act is beyond the court's jurisdiction despite § 8715. *Accord Robinson v. United States*, 8 Cl.Ct. 343 (1985). In *Robinson*, this court held that a plaintiff relying upon § 8715 must establish a "claim for which recovery of money damages is authorized by the Life Insurance Act." *Id.* at 345.

The Health Benefits Act (1959) followed the Life Insurance Act (1954) by about 5 years. The jurisdictional sections of the two Acts are identical, and the legislative history of the later Act is silent on the intention of Congress in adopting the identical language of the Life Insurance Act. *See* 1959 U.S.Code Cong. & Ad.News, 86th Cong., 1st Sess., p. 2913, *et seq.* Presumably, therefore, Congress had the same intent in using such language in 5 U.S.C. § 8912 as it did in enacting the predecessor § 8715, *i.e.*, merely to expand the district court's jurisdiction under 28 U.S.C. § 1346(b) to allow making the United States a party defendant to a suit.

■ Nor can any right to compensation under these circumstances be determined from the regulations governing the FHP. Section 890 of 5 C.F.R. deals with eligibility for enrollment and actions "reviewing a claim denied by a plan." There is no "fair interpretation" that an employee can sue for money, absent a denial of enrollment or benefits under a plan, merely because he objects to the plans in the program.

### C. *Suggestion Award.*

Plaintiff seeks an amount equal to what the government would have saved had it adopted his suggestion that abortion and contraception coverage be deleted from the FHP.

The governing statute provides that the head of any agency "may pay a cash award to * * * an employee who (1) by his suggestion * * * contributes to the efficiency, economy or other improvement of Government operations * * *." 5 U.S.C. § 4503. The determination whether or not to make an award rests with the head of the agen-

cy, as does the amount to be paid. *Id.* § 4502.

The decision is thereby wholly discretionary for suggestions accepted, and lacks the "money mandating" provision required for Tucker Act jurisdiction. *See Adair v. United States*, 227 Ct.Cl. 345, 648 F.2d 1318 (1981) (court lacks jurisdiction over claim grounded on incentive pay statute that is discretionary in nature). *Accord Uraga v. United States*, 4 Cl.Ct. 106 (1983).

Because plaintiff's suggestion was not accepted, there is also no basis on which to claim an award was due on the theory of an implied contract. *Griffin v. United States*, 215 Ct.Cl. 710 (1978), in which the Court of Claims exercised jurisdiction over an incentive award on a theory of implied-in-fact contract because the Air Force had accepted and implemented the suggestion *and* made an award (although in a lesser sum than that sought), is inapposite here. No contract can be implied where the government rejected the suggestion. *See McGee v. United States*, 5 Cl.Ct., at 482 (1984).

### Conclusion

For the foregoing reasons, defendant's motion for summary judgment is allowed. The clerk is directed to dismiss the complaint, with costs to be allowed to defendant.