**Garrett Jack OGDEN Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 04–608C.

United States Court of Federal Claims.

May 25, 2004.

Garrett Jack Ogden, Greenville, Illinois, pro se.

James Meister, Trial Attorney, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, for the defendant.

**ORDER**

HORN, Judge.

Plaintiff, Garrett Jack Ogden, filed a complaint, *pro se*, against the United States, requesting relief for injuries allegedly sus-

tained during his criminal prosecution for possession of counterfeit currency and his subsequent incarceration in a federal correctional institution in Greenville, Illinois.

### BACKGROUND

Plaintiff's complaint alleges that, on August 5, 2001, he "was stopped and detained by the Topeka, Kansas police department, who were under orders from Joseph W. Roberts, an agent of the United States Secret Service, alond [sic] with other unidentified actors identifying themselves as Secret Service Agents." Plaintiff further alleges that he was arrested and held without a signed arrest warrant and that his home and vehicle were searched without a proper search warrant.

On August 15, 2001, plaintiff was indicted for one count of counterfeiting. Plaintiff pleaded guilty to possession of counterfeit currency in violation of 18 U.S.C. § 472 (2000) in the United States District Court for the District of Kansas. On July 10, 2002, plaintiff was sentenced to a term of forty-one months, supervised release of three years following his incarceration and an assessment of a $100.00 criminal monetary penalty.

Plaintiff, in his complaint, requests that this court award monetary damages in the amount of fourteen million dollars based on fourteen claims against the government.[1] Plaintiff's complaint alleges: (1) that agents of the United States committed fraud when they "knowingly, willfully, and deliberately, with malice, created a counterfeit 'INDICTMENT' and [']WARRANT FOR ARREST' ";[2] (2) that "United States Secret Service Agent Joseph W. Roberts, aided by [D]istrict [C]ourt [J]udge Richard D. Rogers, willfully and deliberately, with malice, issued and executed an invalid and libelous 'WARRANT FOR ARREST' "; (3) that Agent Roberts "willfully and deliberately, with mal-

ice, used an unendorsed 'WARRANT FOR ARREST' to justify his armed assault against Garrett J. Ogden"; (4) that Agent Roberts and an accomplice "used fraudulent and deceptive statements, as well as a fraudulent 'SEARCH WARRANT' to gain entrance, and access to, the Plaintiff's residence ... to tresspass [sic] into the 'LOCKED AND PRIVATE DWELLING' of Garrett J. Ogden and his family ..."; (5) that government agents "used an unendorsed **WARRANT FOR ARREST** to kidnap Garrett Jack Ogden and deprive him of liberty, against all existing laws"; (6) that government agents—two District Court Judges, a United States Attorney, unknown United States Marshals and a Warden, "knowingly, wilfully and deliberately, with malice, used an unendorsed **WARRANT FOR ARREST**, attaching the name Garrett Jack Ogden at some later date without the plaintiff's permission, consent, and otherwise commiting [sic] theft of the private Common Law indentity [sic] of Garrett Jack Ogden and knew directly, indirectly or otherwise, their conduct was unauthorized and contrary to existing law"; (7) that government agents "aided and conspired in the kidnapping of Garrett Jack Ogden... forcing Garrett Jack Ogden to **LABOR for them**"; (8) that the United States Secret Service Agent "executed the kidnapping of Garrett Jack Ogden resulting in the deprivation of said Plaintiff from enjoying the **COMPANIONSHIP WITH HIS WIFE** ... contrary to Amendment IX of the Constitution of the United States of America"; (9) that plaintiff's kidnapping resulted "in the 'DEPRIVATION of said Plaintiff enjoying his **COMPANIONSHIP WITH HIS CHILDREN'** ... contrary to Amendment IX of the Constitution of the United States of America"; (10) that the kidnapping by government agents "kept him from **OBTAINING MONIES/COMPENSATION TO SUP-**

---

1. This court also is in receipt of the plaintiff's Application to Proceed In Forma Pauperis. By order dated April 28, 2004, this court noted that the plaintiff's application lacked a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner," as required by 28 U.S.C. § 1915(a)(1) (2000). Plaintiff failed to provide the required statement by the required due date, May 12, 2004, established by the court's order, and, in fact, has not provided the

statement as of the date of this order. Because this order dismisses plaintiff's complaint, however, the issue is moot.

2. Many of the quotations from the plaintiff's complaint and filings were bolded in the original. They are reproduced in this opinion as submitted by the plaintiff.

PORT HIS FAMILY ... contrary to Amendment IX of the Constitution of the United States of America"; (11) that, by "kidnapping" plaintiff, the government "depriv[ed] him of his rights to participate in commerce, and in effect caus[ed] him and his family a great deal of 'FINANCIAL HARM' ... contrary to Amendment IX of the Constitution of the United States of America"; (12) that the United States, through its agents, "knowingly, willfully and deliberately, with malice, SCARED [sic] THE CHARACTER AND REPUTATION OF Garrett Jack Ogden by using CALUMNIOUS STATEMENTS, WRITTEN AND ORAL to enforce their will rather than the means ... contrary to Amendment IX of the Constitution of the United States of America"; (13) that the kidnapping of plaintiff by government agents "result[ed] in the EXTORTION OF GARRETT JACK OGDEN FROM THE PRIVACY AND COMFORT OF HIS HOME AND FAMILY"; and (14) that "the Corrections Corporation America, doing business as a United States agent of the United States Department of Justice, did by its agent Lt. Applebee DESTROY VALUBLE [sic] PRIVATE PROPERTY to wit irreplacable [sic] court documents that said actors knew would serve to aid Garrett Jack Ogden in the defense of the accusations brought against him."

In another section of his complaint, plaintiff reiterates in partially different terminology the following improper acts by government agents: "Fraud," "Armed Assault," "Trespass," "INVASION OF PRIVACY," "KIDNAPPING AND UNLAWFUL DETENTION," "Theft of Private Identity," "injury of Forced Labor," "Loss of Companionship with my Wife" and "Children," "FORCED LABOR," "Financial Hardship," "LOSS OF LIBERTY," "LIBEL," "EXTORTION," "OBSTRUCTION OF JUSTICE," and "THEFT BY OBSTRUCTION," all seeking $14,000,000.00 in compensation.

**3.** Although the court is not obliged to make a plaintiff's argument and should not act as plaintiff's attorney, the court has attempted to use its best efforts to extract the legal theories plaintiff

## DISCUSSION

The court recognizes that the plaintiff is proceeding *pro se* and, accordingly, the plaintiff is entitled to liberal construction of his pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (requiring that allegations contained in *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972). The United States Supreme Court reiterated this standard in *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977), and in *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Therefore, the court has construed plaintiff's filings liberally and has attempted to give its best efforts to extract the legal theories plaintiff appears to assert. "This latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements." *Bernard v. United States,* 59 Fed.Cl. 497, 499 (2004), *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.2004), *reh'g denied* (2004).

This court "is obliged to notice on its own motion the want of its own jurisdiction." *Carter v. United States,* 15 Cl.Ct. 753, 756 (1988) (*citing Hambsch v. United States,* 857 F.2d 763, 765 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1054, 109 S.Ct. 1969, 104 L.Ed.2d 437 (1989)), *see also Hafen v. United States,* 30 Fed.Cl. 470, 472 (1994), *aff'd,* 47 F.3d 1183 (Fed.Cir.1995). Pursuant to Rule 12(h)(3) of the Rules of the Court of Federal Claims (RCFC) and Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Therefore, the court considers the matter of its jurisdiction over this action *sua sponte.*

Plaintiff's complaint appears to include claims based on alleged violations of the United States Constitution and claims sounding in tort.[3]

appears to assert. In the instant case, the court notes that plaintiff's confusing organization and word choice make distilling plaintiff's causes of action and requests for relief difficult.

## I. Plaintiff's Constitutional Claims

■ Plaintiff alleges, without providing either a factual basis or, with the exception of Amendment IX, even associating the Constitutional Amendment to a specific claim, violations of the United States Constitution, First, Fourth, Sixth, Eighth, Ninth and Tenth Amendments. Not every claim, however, which involves or invokes the Constitution necessarily confers jurisdiction on this court. *See Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967). In *United States v. Testan*, the United States Supreme Court stated:

> Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation—does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis "in itself ... can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp. v. United States*, 178 Ct.Cl., at 607, 372 F.2d, at 1008, 1009.

*United States v. Testan*, 424 U.S. 392, 401–02, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (alteration in original).

This court may only render judgment for money when the violation of a constitutional provision, statute, or regulation independently mandates payment of money damages by the United States. *See Khan v. United States*, 201 F.3d 1375, 1377–78 (Fed.Cir. 2000). For example, the First Amendment, standing alone, cannot be interpreted to require the payment of money for its alleged violation, and, therefore, does not provide an independent basis for jurisdiction in this court. *See United States v. Connolly*, 716 F.2d 882, 886–87 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984); *see also Hamlet v. United States*, 63 F.3d 1097, 1107 (Fed.Cir.1995), *cert. denied*, 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996); *Featheringill v. United States*, 217 Ct.Cl. 24, 33, 1978 WL 5755 (1978); *Ro-*

*sano v. United States*, 9 Cl.Ct. 137, 142 (1985), *aff'd*, 800 F.2d 1126 (Fed.Cir.1986), *cert. denied*, 480 U.S. 907, 107 S.Ct. 1350, 94 L.Ed.2d 521 (1987). Nor does the Fourth Amendment provide a basis for jurisdiction in this court. *See Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir.1997). The same is true of allegations concerning violation of the Due Process clauses of the Fifth and Fourteenth Amendments and the Equal Protection clause of the Fourteenth Amendment, since nothing in those clauses can be read to mandate monetary compensation.[4] *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed.Cir.1995); *see also Crocker v. United States*, 125 F.3d 1475, 1476 (Fed.Cir.1997); *Collins v. United States*, 67 F.3d 284, 288 (Fed.Cir.1995) (citing additional cases); *Mullenberg v. United States*, 857 F.2d 770, 773 (Fed.Cir.1988); *Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987).

Plaintiff's allegations with respect to violations of the Sixth, Eighth, Ninth and Tenth Amendments are similarly outside the jurisdiction of this court because those clauses also do not mandate monetary compensation. *See Loeh v. United States*, 53 Fed.Cl. 2 (2002); *Smith v. United States*, 51 Fed.Cl. 36, 38 (2001); *Milas v. United States*, 42 Fed.Cl. 704, 710 (1999), *aff'd*, 217 F.3d 854 (Fed.Cir.1999). As summed up in *Rosano v. United States*, 9 Cl.Ct. at 142 (1985), the Court of Federal Claims has clear jurisdiction only with respect to constitutional claims founded on the Takings Clause of the Fifth Amendment, as other amendments to the Constitution do not, of themselves, mandate payment for violations. Because the plaintiff has not alleged a taking, arguing that plaintiff's claims are founded on other non-money mandating Constitutional Amendments, the claims are outside the jurisdiction of the United States Court of Federal Claims.

## II. Plaintiff's Claims Sounding in Tort

■ It is well established that the Court of Federal Claims lacks jurisdiction over cases sounding in tort. The modern Tucker Act limits the jurisdiction of the United States

---

4. Although plaintiff does not specifically make a Due Process claim, some of his allegations might    be construed as such.

Court of Federal Claims to "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(2) (2000). Furthermore, courts which have inquired into the scope of the Tucker Act's jurisdictional grant have concluded that section 1491 does not grant jurisdiction over tort claims to the Court of Federal Claims. *See New Am. Shipbuilders v. United States*, 871 F.2d 1077, 1079 (Fed.Cir.1989) ("If the government misconduct alleged was tortious, jurisdiction is not granted the Claims Court under the Tucker Act...."); *Tree Farm Dev. Corp. v. United States*, 218 Ct.Cl. 308, 316, 585 F.2d 493, 498 (1978) (noting that the Court of Claims "specifically lacks jurisdiction in cases sounding in tort" under the Tucker Act); *Whyte v. United States*, 59 Fed.Cl. 493 (2004) (The Tucker Act does not grant the court jurisdiction over independent tort claims.); *Cottrell v. United States*, 42 Fed.Cl. 144, 148 (1998) ("The Tucker Act limits the court's jurisdiction to non-tort money suits against the United States ...."); *see also Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir.1997) ("The Court of Federal Claims ... lacks jurisdiction over tort actions against the United States."), *reh'g denied* (1997); *LeBlanc v. United States*, 50 F.3d 1025, 1030 (Fed.Cir.1995) (noting that claims against the government for illegal interference with a lawsuit are "tort claims, over which the Court of Federal Claims has no jurisdiction"); *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed.Cir. 1993) ("It is well settled that the United States Court of Federal Claims lacks—and its predecessor the United States Claims Court lacked-jurisdiction to entertain tort claims."). The United States Supreme Court recognized as early as 1868 that Congress did not intend to confer on the Court of Claims jurisdiction over tort actions against the government: "The language of the statutes which confer jurisdiction upon the Court of Claims, excludes by the strongest implication demands against the government founded on torts." *Gibbons v. United States*, 8

Wall. 269, 75 U.S. 269, 275, 19 L.Ed. 453 (1868). Finally, "[j]urisdiction to hear tort claims is exclusively granted to the United States District Courts under the Federal Tort Claims Act." *McCauley v. United States*, 38 Fed.Cl. 250, 264 (1997), *aff'd*, 152 F.3d 948 (Fed.Cir.1998), *cert. denied*, 525 U.S. 1032, 119 S.Ct. 574, 142 L.Ed.2d 478 (1998), *reh'g denied*, 525 U.S. 1173, 119 S.Ct. 1102, 143 L.Ed.2d 101 (1999); *see also* 28 U.S.C. § 1346(b) (2000); *Wood v. United States*, 961 F.2d 195, 197 (Fed.Cir.1992) ("[D]istrict courts have ... exclusive jurisdiction over tort claims for any amount if they fall within the Federal Tort Claims Act, [28 U.S.C.] § 1346(b)."), *reh'g denied* (1992); *Martinez v. United States*, 26 Cl.Ct. 1471, 1476 (1992) ("The district courts have exclusive jurisdiction in [Federal Tort Claims Act] actions."), *aff'd*, 11 F.3d 1069 (Fed.Cir.1993). Any claim the plaintiff might assert for tort relief, therefore, cannot be entertained in this court.

Whether an action sounds in tort, however, is determined not by the nomenclature chosen by the parties, but by the character of the underlying dispute. *See Brazos Elec. Power Co-op., Inc. v. United States*, 144 F.3d 784, 787 (Fed.Cir.1998) ("[W]e customarily look to the substance of the pleadings rather than their form."); *Nat'l Ctr. for Mfg. Sciences v. United States*, 114 F.3d 196, 199 (Fed.Cir.1997) ("Notwithstanding the imprecision of the complaint, we therefore 'look to the true nature of the action in determining the existence or not of jurisdiction.'") (quoting *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed.Cir.1994)). The court will not dismiss a claim, the substance of which is within the court's jurisdiction, simply because a party describes it as "tortious." Similarly, the court's jurisdiction is not satisfied by a complaint which simply alleges tort causes of action without labeling them as such.

In this court, plaintiff seeks compensation for "injuries for the willful, malicious, and deliberate acts" of the government agents named in his complaint. Plaintiff's allegations appear to amount, alternatively, to common law tort claims against government officials or causes of action arising under the Federal Tort Claims Act for false imprison-

ment, false arrest or abuse of process by an "officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h) (2000). Plaintiff's first claim appears to be based on alleged fraudulent actions by various government agents. Because fraud, as a cause of action, lies in tort, *see Brown v. United States,* 105 F.3d at 623, this court lacks subject matter jurisdiction over plaintiff's claims. 28 U.S.C. § 1491(a)(2) (2000). Plaintiff's second and twelfth claims, apparently for libel, similarly lie in tort, *see Foretich v. United States,* 351 F.3d 1198, 1215–16 (D.C.Cir. 2003), as do plaintiff's third and fourth claims, for assault and trespass, respectively. *See Joyner v. Sibley Memorial Hosp.,* 826 A.2d 362, 367 n. 6 (D.C.2003); *Gaetan v. Weber,* 729 A.2d 895, 898 (D.C.1999). Plaintiff's fifth, sixth, seventh, thirteenth and fourteenth claims, however, appear actually to be for alleged violations falling under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2680(h). Finally, plaintiff's eighth and ninth claims appear to be for loss of spousal and filial consortium, respectively, both common law torts. *See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1032 (D.C.Cir.1997); *Massengale v. Pitts,* 737 A.2d 1029, 1032 (D.C.1999). Thus, to the extent that plaintiff's claims sound in tort, this court lacks subject matter jurisdiction over them.[5]

### CONCLUSION

The court finds that the plaintiff has failed to establish the court's subject matter jurisdiction over the claims raised. For the reasons discussed above, the court, hereby, **DISMISSES** the plaintiff's complaint. The clerk's office shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

5. Counts ten and eleven appear to be claims for damages which are not reached due to the absence of jurisdiction in this court.